IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Johnson, #350430, | ) | C/A No.    5:13-cv-02038-JMC-KDW |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | |
| | ) | |
| Warden John Pate, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Petitioner is a state prisoner who filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF No. 103.[1]  On June 5, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 109. Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment on July 8, 2015. ECF No. 117. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 103, be granted.

I.      Background

Petitioner is currently incarcerated in the Ridgeland Correctional Institution of the South Carolina Department of Corrections ("SCDC"). ECF Nos. 113, 115. In August 2011, Petitioner

---

[1] Initially, Respondent filed a Return and Motion for Summary Judgment on January 14, 2015. ECF Nos. 76, 77. Respondent's initial motion was withdrawn after the court granted Petitioner's Motion to Amend his Petition. *See* ECF Nos. 104, 107.

was indicted by a Greenville County Grand Jury for trafficking heroin (2011-GS-23-0544) and possession with intent to distribute (PWID) methamphetamine (2011-GS-23-0545). App. 4, 141-42.[2] On April 9, 2012, Petitioner pleaded guilty pursuant to *Alford v. North Carolina*, 400 U.S. 25, 91 S. Ct. 160 (1970), to the offenses before the Honorable Letitia H. Verdin. App. 1-33. During his plea, Christopher T. Posey, Esquire, represented Petitioner, and Assistant Solicitor Judy M. Munson appeared on behalf of the State. *Id.* Petitioner was sentenced to 15 years for each charge, and the sentences were ordered to run concurrently. App. 31-32.

II.     Procedural History

Petitioner did not directly appeal his guilty plea or sentence. ECF No. 1 at 2; App. 35. On June 7, 2012, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging that Agents from the Greenville County Sheriff's Office unlawfully entered his hotel room. App. 34-78. On August 31, 2012, the State filed a Return and requested an evidentiary hearing. App. 96-99. An evidentiary hearing was conducted before the Honorable G. Edward Welmaker on December 18, 2013. App. 100-132. Petitioner was present and represented by Brian Johnson, Esq., and Karen Ratigan, Esq., represented the State. *Id.* Petitioner and plea counsel Posey testified at the hearing. *Id.* In an Order dated February 17, 2014, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

<u>ALLEGATIONS</u>

In his application, the Applicant alleges he is being held in custody unlawfully for the following reasons:

1. Ineffective assistance of counsel.

---

[2] Citations to "App." refer to the Appendix for Petitioner's plea transcript and Post-Conviction Relief Proceeding documents. That appendix is available at ECF No. 76-1 in this habeas matter.

        2. Prosecutorial misconduct.
        3. <u>Brady</u> violation.
        4. Invalid search and seizure.

At the PCR hearing, counsel for the Applicant stated they were proceeding solely upon the following issues:

        1. Ineffective assistance of counsel:
             a. Failed to subject the case to adversarial testing.
             b. Failed to challenge evidence.
             c. Failed to investigate the co-defendant.
             d. Failed to challenge the search.
             e. Misadvised about parole eligibility.
             f. Interfered with the Applicant's statement at the plea hearing.
             g. Failed to challenge selective prosecution.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." <u>Frasier v. State</u>, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984); <u>Porter v. State</u>, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). When there has been a guilty plea, the applicant must prove that counsel's representation was below the standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106 S .Ct. 366, 370 (1985); <u>Roscoe v. State</u>, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001).

3

The Applicant stated he fired his first attorney approximately fifteen months into his case and that plea counsel was appointed on March 16, 2012. The Applicant stated he met with plea counsel and discussed: the facts of the case, the issues the Applicant found relevant, the possible penalties, the types of pleas available, and whether the offenses were parole eligible. The Applicant stated he wanted plea counsel to look into whether there was selective prosecution in his case because, while he was arrested with a co-defendant, she was never prosecuted. The Applicant stated he told plea counsel that he wanted a <u>Franks</u>[2] hearing to determine if the search in his case was legal-but that counsel said he would not receive such a hearing. The Applicant stated plea counsel told him that his trafficking charge would not be parole eligible if he went to trial, but would be parole eligible if he pled guilty. The Applicant stated be attempted to read a statement at the plea hearing but that the plea judge told him to shorten his statement.

Plea counsel testified he was appointed to the Applicant's case less than one month before the plea hearing. Plea counsel testified he received the discovery material from the Applicant's prior attorney and reviewed it with the Applicant. Plea counsel testified they also reviewed: the element of the offenses, the sentencing ranges, possible defenses, and the Applicant's version of events. Plea counsel testified they also discussed the co-defendant and that she would testify against him at trial. Plea counsel testified they discussed the case thoroughly and that the Applicant never asked him to investigate anything. Plea counsel testified they discussed entering a guilty plea at their first meeting and that the Applicant decided to enter an <u>Alford</u> plea (after he explained the concept to him). Plea counsel testified it was not proper to argue selective prosecution in this case and that he explained this to the Applicant. Plea counsel testified they discussed the warrantless search and that a <u>Franks</u> motion would be something argued before a trial. Plea counsel testified it is clear from the record that the Applicant understood the trafficking charge was a no parole offense. Plea counsel testified the Applicant never said he was pleading guilty because of parole eligibility. Plea counsel testified that, while the Applicant had prepared a statement to read at the plea hearing, he did not realize how long of a statement. Plea counsel testified he told the Applicant to shorten his statement because it was clear the plea judge had heard all that she wanted to hear. Plea counsel testified that truncating the Applicant's statement did not affect the outcome of the case.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. This Court further finds plea counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his

---

[2] <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S. Ct. 2674 (1978).

representation. The Applicant did not dispute the State's recitation of facts at the guilty plea hearing. The Applicant also told the plea judge that he understood the trial rights he was waiving in pleading guilty, was satisfied with counsel, and had not been coerced. (Plea transcript, pp.6-8).

This Court finds the Applicant failed to meet his burden of proving plea counsel should have argued selective prosecution in his case. The Applicant stated at the PCR hearing that, while he and his co-defendant were similarly situated, the case against her "evaporated." Plea counsel testified there was no basis to pursue this claim because he could find there was no evidence that the prosecutorial discretion was based upon bias. This Court notes that, in order to prevail on a claim for selective prosecution at trial, the movant must show not only that he "had been singled out for prosecution, but that the decision to prosecute was based on unconstitutional considerations . . . such as race, religion, or his exercise of his [F]irst [A]mendment right to free speech." State v. Geer, 391 S.C. 179, 194, 705 S.E.2d 441, 449 (Ct. App. 2010). This Court finds the Applicant failed to meet his burden of proving either that there was selective prosecution or that it was incumbent upon plea counsel to argue this issue.

This Court finds the Applicant failed to meet his burden of proving plea counsel should have contested the warrantless search in his case by moving for a Franks hearing. Plea counsel testified he had explained to the Applicant that a Franks hearing would take place immediately before trial as a pre-trial motion. This Court finds plea counsel is credible on this point. This Court finds the Applicant knowingly waived the right to challenge the search in a Franks hearing when he chose to plead guilty. See State v. Tucker, 376 S.C. 412, 417, 656 S.E.2d 403,406 (Ct. App. 2008) (noting "[g]uilty pleas generally act as a waiver of all non-jurisdictional defects and defenses").

This Court finds the Applicant failed to meet his burden of proving plea counsel misadvised him about parole eligibility. Plea counsel testified he discussed the nature of the charges against the Applicant, including the meaning of a statutorily violent offense. Plea counsel also testified he had no reason to believe the Applicant pled guilty for the sole reason of being parole eligible. This Court finds plea counsel's testimony is more credible than that of the Applicant. This Court finds the Applicant was properly advised about parole eligibility in this case and has presented no credible evidence that this guilty plea was premised upon being parole eligible. This Court notes the Applicant answered "[a]bsolutely not" when the plea judge asked if he had been made any promises in exchange for his guilty pleas. (Plea transcript, p.6).

This Court finds the Applicant failed to meet his burden of proving plea counsel improperly handled his allocution. The Applicant argues plea counsel: (1) should have contested the plea judge's decision to shorten his allocution statement and (2) not told him to shorten his statement. Plea counsel testified he had no idea

how long the Applicant's statement was going to be and that he did not believe the shortened statement affected the outcome at sentencing. At the plea hearing, plea counsel offered mitigation on his behalf. (Plea transcript, pp.11-12). The Applicant then began to read his statement and, at one point, the plea judge stated "[t]his is probably the stuff we can kind of pare down a little bit there" and plea counsel told the Applicant "I would, do about a minute more." (Plea transcript, pp.13-21). The Applicant stated he would hand his written statement to the plea judge after he concluded and then resumed reading his statements (Plea transcript, pp. 21-30). Initially this Court notes the Applicant cannot argue the plea judge erred in this matter, as allegations of plea court error are not cognizable in PCR. Wolfe v. State, 326 S.C. 158, 485 S.E.2d 367 (1997). Regardless, this Court does not find plea counsel was deficient in objecting to the plea judge's request to shorten the statement. This Court also does not find plea counsel was deficient in himself advising the Applicant to be briefer. Further, the Applicant cannot prove he was prejudiced by giving a shortened version of his allocution statement. It is clear the plea judge had the Applicant's statement before her and was adequately apprised of his mitigation argument. This Court finds the Applicant has failed to demonstrate the outcome of his plea hearing would have been different if he had been allowed to recite his entire statement to the plea judge.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test - that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland—that he was prejudiced by plea counsel's performance.

This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings. Counsel was not deficient in any manner

and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

App. 133-140. On December 22, 2014, Appellate Defender John Strom filed a *Johnson*[3] Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 76-2. The sole issue presented, quoted verbatim, was:

Did the PCR court err in finding Petitioner knowingly, voluntarily, and intelligently entered into an *Alford* plea when Petitioner based his decision to plea on counsel's advice and Petitioner had no knowledge of counsel's failure to investigate the possibility of suppressing evidence found during a warrantless search of Petitioner's hotel room or of counsel's failure to investigate the possible agreement between an individual arrested with Petitioner and the State?

*Id.* at 3. Additionally, Petitioner filed three pro se Responses to the *Johnson* Petition. ECF No. 101-1. This habeas Petition was filed on July 25, 2013, ECF No. 1, before Petitioner's state remedies were exhausted. On March 4, 2015, the South Carolina Supreme Court denied the petition for certiorari and issued the Remittitur on March 20, 2015. ECF Nos. 101-2; 101-3.

   III.    Discussion

         A.  Federal Habeas Issues

Petitioner raises the following 14 issues in his federal Petition for a Writ of Habeas Corpus and stated verbatim:

GROUND ONE: Illegal search /seizure

Supporting facts: Deputies entered a hotel room rented by Petitioner at gunpoint, without a valid search <u>or</u> arrest warrant. Originally claiming 'exigent' circumstances ("hot pursuit") to justify entry to magistrate, deputies falsified a second 'exigent' circumstance

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (1988).

("plain view") to explain unjustified seizure and search of Petitioner. Both claims were wholly fabricated and patently false, designed to corrupt magistrate's "uninterested" examination of the facts. ECF No. 1 at 5.

GROUND TWO: Conspiracy to deprive Petitioner of constitutional and civil rights (under color of law).

Supporting facts: Knowing an illegal search and seizure had been made, police discussed, within view and earshot of Petitioner, ways to "stage" the room to make it appear, by dint of photo/video documentation and manipulation of K-9 Officer (who didn't make "breach" entry), that "plain view" evidence contention was valid and lawful, and to satisfy court's "uninterested" and "impartial" scrutiny in future proceedings. *Id.* at 6-7.

GROUND THREE: Subornation of perjury; perjury.

Supporting facts: Officers involved in case held discussion on how to defeat requirement to show probable cause, to magistrate, and created a false scenario to present to court, designed for purposes of prolonging and ensuring Petitioner's unlawful detention and subsequent imprisonment. Deputy C.J. Todd made presentation and received a search warrant from Judge. *Id.* at 8.

GROUND FOUR: Attempting to create 'exigent' circumstances in order to further (as well as facilitate) rights violations.

Supporting facts: Agents claimed in affidavits and police reports that they observed Petitioner's co-arrestee (Joyce Edwards; also the officers' alleged investigational Target) make several entries into, and exits from, Petitioner's room, yet made no attempts to identify her up close, or apprehend her, in spite of their assertion that she was positively identified from a distance. This eventually led to the warrantless entry/search. *Id.* at 10.

GROUND FIVE: Fraud (Intrinsic and Extrinsic) upon court.

Supporting facts: Fabricated testimony was presented to magistrate in order to procur a search warrant from magistrate after Petitioner had already been unlawfully detained, and, for all intents and purposes, been unlawfully arrested. None of the alleged articles of alleged evidence against Petitioner were seized pursuant to the search warrant, but rather before its issuance, leaving the arrest to justify the evidence, and the evidence to justify the arrest, a clear constitutional violation. Additionally, Solicitor Joyce K. Monts herself knowingly used and presented false testimony to Hon. Letitia H. Verdin at Petitioner's sentencing, when she attempted to argue for a harsher sentence. The use of patently false information, hence, the Petitioner's allegation of perjury against her, also violated clearly established federal, constitutional law. *Id.* at 12-13.

GROUND SIX: Conspiracy to create, and present, false, and withhold exculpatory, evidence.

8

Supporting facts: <u>Multiple</u> members of the Greenville County Sheriff's Office devised a scheme to incorporate and submit a tainted, perjured and altogether "fantastic" version of events to the magistrate judge, in furtherance of a <u>concerted</u> effort to conceal their misconduct and insidious actions, from the magistrate's 'impartial' and "uninterested' scrutiny. Throughout Petitioner's case, <u>all</u> of the conspirators withheld disclosure of their misconduct from the Court <u>and</u> Petitioner, although that knowledge was <u>clearly</u> 'Brady' material, and failing to disclose it, due to its exculpatory nature, violated Petitioner's rights. *Id.* at 13.

GROUND SEVEN: False arrest.

Supporting facts: From the <u>moment</u> Petitioner encountered narcotics agents of Greenville County he was seized, at gunpoint, and held, without cause, in what amounts to a <u>kidnapping</u>, during the course of an armed burglary. The fact that perjury, tampered and manipulated evidence, a warrantless search, and a conspiracy were all used to facilitate an arrest (and subsequent conviction), <u>all</u> serve to bolster and corroborate Petitioner's allegations. *Id.* at 13-14.

GROUND EIGHT: Unlawful imprisonment.

Supporting facts: Petitioner has been "in custody" since October 7, 2010 as a <u>direct</u> result of his false arrest. *Id.* at 14.

GROUND NINE: Coercion.

Supporting facts: Although Petitioner invoked, in no uncertain terms, his right to remain silent and only be questioned in the presence, and with benefit, of counsel, police nonetheless continued to question him, plied him with cigarettes, promises not to prosecute co-arrestee, threats, intimidation, the issue of <u>race</u> (to question Petitioner's loyalty to his co-arrestee), in their effort to have Petitioner implicate himself. *Id.*

GROUND TEN: Selective and malicious prosecution.

Supporting facts: From the moment agents made contact with Petitioner, screaming (at gunpoint), "show me your hands nigger!" and "Get your ass on the bed boy!", he was the sole target of police investigation and prosecution. In spite of ample evidence in existence that demonstrated Joyce Evelyn Edwards (aforementioned 'co-arrestee') was an actual conspirator. For example, Edwards had just used heroin Petitioner was charged with minutes before arrest, syringe and baggies were seized from her purse, police allegation that they "witnessed" her making multiple entries into, and exits from, Petitioner's hotel room, etc.

Ms. Edwards (a white female), was originally assigned the same charges and bail as Petitioner (a mixed-race male of predominantly African-American features), yet <u>her</u>

charges were inexplicably "dropped", without any "cooperation" from her (of any kind), despite South Carolina's common law "hand of one, hand to all" doctrine, as set forth in State v. Green, 200 S.E.2d 74 (1973), which established "when two or more persons aid, abet, and encourage each other in the commission of a crime, all being present, each is guilty as a principal."

Solicitor Monts continued pursuit of prosecution of Petitioner, even though ex parte communications to her, W. Walter Wilkins (head Solicitor for Greenville County), the "duped" magistrate judges, and the U.S. attorney's office for Greenville all alleged a cover-up, conspiracy, impropriety, misconduct, perjury, etc., without investigating claims, suggesting knowledge of misconduct and/or participation. This is further corroborated by Ms. Monts' use, herself, of a fabricated version of events to argue for court's harsher treatment of Petitioner at sentencing. *Id.* at 15-16.

GROUND ELEVEN: Official misconduct.

Supporting facts: Covered in above-mentioned grounds. *Id.* at 16.

GROUND TWELVE: Evidence tampering.

Supporting facts: Agents originally claimed that, upon a "hot pursuit" – style entry of Petitioner's hotel room (they claimed to be chasing Ms. Edwards, in order to effect arrest), they noticed "…paraphernalia…in plain view…as well as a quantity of brownish black substance that did field test positive as heroin. During a pat down of Johnson's person he was found to be in possession of a quantity of black substance which did field test positive as heroin and a crystal substance which did field test positive as methamphetamine"… This set of "facts" was laid out in the search warrant application's 'affidavit.'

The "hot pursuit" is immediately contradicted by the police reports of Craig Hawkins and Johnny Brown. Hawkins actually credits himself for the illegal entry stating: "…I saw the door to room #107 open from someone on the inside. I rushed the door yelling 'Greenville County Sheriff's Office…Get down, get down, get down…'"
Johnny Brown corroborates this same scenario, which directly contradicts the "tale" that was given to the magistrate, and neither Johnny Brown nor Craig Hawkins make any claim to anything illegal or even 'suspicious' being "in plain view," despite Hawkins and Brown being the primary and secondary (respectively) agents through the door.

In fact, Hawkins alleges that he asked Petitioner if he was in possession of anything "illegal" and Petitioner allegedly volunteered: …"It's in my pocket…" Agent Parrish also attempts to further this bogus claim, but this is completely alien to what was told to the magistrate when the warrant was sought. Besides the affiant (C.J. Todd), the only person that attempted to pitch the "hot-pursuit" was agent Joseph Parrish, whose 'eyewitness' account stands in such stark contrast, to everyone else's, that it becomes both laughable and incredible in one fell swoop. Parrish was the agent that conspired with Todd and

Hawkins to feed a bogus "hot-pursuit" story to the magistrate. These three, along with Laura Campbell, "staged" the room with the heroin, and the syringe from Ms. Edwards' purse, in order to "dupe" K-9 Officer Cannon, who reportedly 'observed' the plain sight drugs as well as the syringe.

Problem is, the purse (with the syringe and baggies inside) was originally <u>outside</u> of the room, on the sidewalk, as stated in Agent Hawkins' police report. At the time Agent Cannon observed it however, it had been moved <u>inside</u> and its contents "arranged."

Agent Parrish attributes the baggies and "18 Peach pills" (later found to be 'ambien') to a search, performed <u>after</u> a warrant was granted. This "<u>fact</u>," as well as the agent's assertion that the syringe was recovered from Ms. Edwards' purse, means no paraphernalia was in <u>noticeable</u>, <u>plain</u> view. Agents seized digital scales from a closed, zipped backpack, but, according to South Carolina's <u>Code of Laws (annotated, 1976), Title 44 (Health), Chapter 53 (poisons, drugs, and other controlled substances)</u>, article 3 (narcotics and controlled substances), digital or "manual" scales do not fit the definition of paraphernalia.

Lastly, only <u>one</u> "quantity" of heroin was <u>ever</u> taken into evidence, and the search warrant return attributes this to Petitioner's person. This was used in the "staging" as well, but the absence of the second "quantity" poses the question: Which amount did the investigators fabricate or steal?

The search warrant's "return" (inventory) <u>clearly</u> attributes the heroin seized to the Petitioner's <u>person</u>, not a table, a common area, luggage, etc. Petitioner asserts that, since the "return" <u>plainly</u> establishes that only a <u>single</u> amount of heroin was <u>seized</u> and taken into evidence, despite the predication of Petitioner's search, seizure, arrest, and conviction upon a primary "quantity", located "in plain view", and not on his <u>person</u>, only a few possibilities exist to explain its absence: A) theft; B) its existence was fabricated to deceive the court; C) the agents knowingly and deliberately <u>combined</u> it with the drugs alleged to have come from Petitioner's person, in order to raise the weight of alleged narcotics to a threshold that allowed for the charge of trafficking against Petitioner, and to allow Ms. Edwards (who would've been the person in "plain view" heroin's vicinity, therefore a 'principal' under common law) to go free. <u>Any</u> of these scenarios are not only constitutionally "offensive" but down right "shocking." Petitioner possesses <u>all</u> of the documentation to substantiate this (and all other) allegation(s), which beg for federal review/relief. *Id.* at 16-21.

GROUND THIRTEEN: Ineffective assistance of counsel.

Supporting facts: Original trial counsel waived without notice to, or permission of, Petitioner, his right to a preliminary hearing, which could have served as a <u>Franks</u>' hearing, then lied about it for almost 15 months. This act occurred despite Petitioner's <u>clear</u> and unwavering assertion that he wanted, and intended to utilize, this part of his process.

This same counselor, Caroline Horlbeck, <u>refused</u> to investigate or address Petitioner's claims of misconduct, conspiracy, etc. because she stated such claims were 'antagonistic', and therefore could jeopardize agreements she was attempting to cement regarding <u>other</u> clients.

Replacement counsel, Chris Posey, prevented Petitioner from reading a prepared statement to the Court, at his sentencing, which could have served to mitigate his circumstances, even though state law guarantees that right. Yet, when Solicitor Monts argued for a stiffer sentence, using information counselor Posey <u>knew</u> to be false, he made no objection.

Finally, <u>both</u> attorneys <u>refused</u> to provide Petitioner with all of his 'Brady' material, hampering his efforts to formulate, facilitate, and pursue an aggressive, intelligent defense. *Id.* at 21-22.

GROUND FOURTEEN: Actual innocence.

Supporting facts: Supported by the nature of above-mentioned claims themselves. *Id.* at 22.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

          C.          Habeas Corpus Standard of Review

          1.          Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

13

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

14

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina

15

courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in

16

state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

  3.  Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited

17

circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

   D.  Analysis

      1.  Procedurally-Barred Grounds

Respondent argues that pursuant to *Stone v. Powell*, 428 U.S. 465 (1976),[4] Petitioner procedurally defaulted on all Grounds except a portion of Ground Thirteen. ECF No. 101 at 16-37. In Response, Petitioner requests that the court construe all the grounds raised as components of his ineffective assistance claim. ECF No. 117 at 1. Specifically Petitioner maintains:

   Petitioner hereby responds to the Respondent's Motion for Summary Judgment
   by:

---

[4] In *Stone v. Powell*, the Supreme Court held that a state prisoner could not be granted relief on the ground that evidence obtained through an unconstitutional search and seizure was introduced at his trial, in that, in this context, the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment was minimal as compared to the substantial societal costs of applying the rule. 428 U.S. 465 (1976). Contrary to Respondent's assertion, the *Stone* case does not stand for the proposition that Petitioner's claim should be *procedurally* barred from review. Rather, pursuant to *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494.

18

1.   Relinquishing all grounds set forth in his habeas Petition. Except for his "ineffective assistance of counsel" claim ("Ground thirteen"), asking the court to instead construe them as components of his "ineffective assistance" claim, versus individual or "stand-alone" claims[.]

*Id.*

Contrary to Respondent's assertion, the case does not stand for the proposition that Petitioner's claim should be *procedurally* barred from review. Rather, pursuant to *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494.

In Ground One, Petitioner maintains that deputies entered the hotel room without a valid search or arrest warrant. ECF No. 1 at 5. In Ground Two, Petitioner maintains that an illegal search and seizure was made, and police discussed ways to "stage" the room to make it appear that evidence was in plain view. *Id.* at 7. In Ground Three, Petitioner maintains that the arresting officers committed perjury and created a false scenario that was presented to procure a search warrant from a judge. *Id.* at 8. In Ground Four, Petitioner maintains that officers attempted to create 'exigent' circumstances that they falsified in affidavits and police reports. *Id.* at 10. In Ground Five, Petitioner argues that fraud was committed when fabricated testimony was presented to a magistrate in order to procure a search warrant after Petitioner had already been unlawfully detained. Additionally, Petitioner alleges that Solicitor Joyce K. Monts used and presented false testimony during his sentencing. *Id.* at 12-13. In Ground Six, Petitioner maintains that there was a conspiracy to create and present, false evidence between multiple members of the Greenville County Sheriff's Office. *Id.* at 13. In Grounds Seven and Eight, Plaintiff maintains he was falsely arrested and unlawfully imprisoned. *Id.* at 13-14. In Ground Nine, Petitioner maintains that he was coerced into implicating himself even though he had invoked his right to

remain silent. *Id.* at 14. In Ground Ten, Petitioner alleges he was selectively and maliciously prosecuted in spite of ample evidence in existence that demonstrated Joyce Evelyn Edwards (aforementioned 'co-arrestee') was an actual conspirator. *Id.* at 15-16. Petitioner maintains that official misconduct occurred in Ground Eleven. *Id.* at 16. In Ground Twelve, Petitioner alleges that evidence tampering occurred because drug paraphernalia was not in plain view and the officers were not in "hot pursuit." *Id.* at 16-21. Finally, in Ground Fourteen,[5] Petitioner alleges actual innocence. *Id.* at 22.

The undersigned finds that Grounds Seven, Eight, Nine, Eleven, and Fourteen are procedurally barred from habeas review.[6] Additionally, the undersigned finds that the portion of Petitioner's Ground Thirteen claim devoted to his first trial counsel is procedurally barred. The undersigned has reviewed Petitioner's PCR application and the transcript of the PCR hearing and observes that these grounds were either not raised in Petitioner's application, *see* App. 34-95, or were abandoned during the PCR hearing, s*ee* App. 100-142.  The undersigned has also reviewed the PCR court's Order of Dismissal and finds that these grounds were not ruled on by the PCR court. App. 133-142. Therefore, these issues are procedurally barred from federal habeas review. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred).  Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising these grounds in his habeas Petition.

---

[5] Ground Thirteen is Petitioner's ineffective assistance of counsel claim and will discussed in the next section.

[6] This court previously addressed Plaintiff's § 1983 civil claims for false arrest and false imprisonment in Civil Action Number 6:13-cv-01652-JMC-KDW.

Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488.  Having reviewed the record evidence and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims.   Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.), cert. denied, 519 U.S. 1016 (1996) (finding in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. The undersigned therefore

21

recommends that the Respondent's Motion for Summary Judgment be granted as to Grounds Seven, Eight, Nine, Eleven, and Fourteen.[7]

2.    Merits Analysis of Ineffective Assistance of Counsel Claims

In Petitioner's PCR application, he argued that agents of Greenville County's Sheriff's Office unlawfully entered his hotel room. App. 36. Additionally, he argued that officers lied about probable cause in order to obtain a search warrant. App. 41. Petitioner made several allegations concerning constitutional rights violations in his PCR application. However, during his PCR hearing, Petitioner's PCR counsel "stated they were proceeding solely upon" ineffective assistance of counsel issues. App. 134. Based on Petitioner's request that the court construe his arguments as bases for ineffective assistance of counsel claims, the court will address whether Petitioner's plea counsel was ineffective. Specifically, the undersigned will address the merits of the Grounds that were argued in this habeas Petition and that are exhausted and not procedurally barred.  Accordingly, the undersigned will review PCR claim (1.)(b.), App. 134, concerning whether plea counsel was ineffective when he "failed to challenge evidence." This ground was effectively raised in this habeas Petition at Ground Twelve. Additionally, the undersigned will review PCR claim (1.)(d.), App. 134, concerning whether plea counsel was ineffective when he "[failed] to challenge the search" as this ground was raised in Grounds One, Two, Three, Four, Five, and Six in this habeas Petition.  Finally, the undersigned will review PCR claims (1.)(f) and (1.)(g.), App. 134, as these grounds were raised in Grounds Ten and Thirteen in this habeas Petition.

---

[7] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds Seven, Eight, Nine, Eleven, and Fourteen.

A petitioner that pleads guilty on counsel's advice may only collaterally attack the voluntary and knowing nature of his guilty plea by showing (1) counsel was ineffective and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Roscoe v. State*, 546 S.E.2d 417, 419 (S.C. 2001). Therefore, Petitioner's allegations are essentially a claim of ineffective assistance of counsel that rendered a guilty plea involuntary. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances. In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

       a.      Failure to challenge evidence (Ground Twelve), and Failure to challenge search (Grounds One, Two, Three, Four, Five, and Six)

Petitioner takes issue with officers' search and arrest based on a number of alleged constitutional rights violations. ECF No. 1 at 5-27. Specifically, Petitioner maintains he was subjected to an illegal search and seizure, *id.* at 5, and was the subject of a conspiracy to deprive him of his constitutional rights, *id.* at 6-7. Additionally, Petitioner alleges that officers presented a false scenario to court, *id.* at 8, attempted to create "exigent circumstances" and did not identify his co-arrestee "up close," *id.* at 10, fabricated testimony in order to procure a search warrant, *id.* at 12, and officers presented a "perjured and altogether 'fantastic' version of events to the magistrate judge," *id.* at 13. Petitioner argues that arresting officers told a "tale" when they said they were in "hot pursuit" of Petitioner. *Id.* at 16-17. Petitioner alleges that Officers Hawkins and Brown made several other "bogus claim[s]," including lying about certain items being in plain view. *Id.* at 17-18. Petitioner argues that the agents fabricated or stole quantities of heroin from the crime scene. *Id.* at 19.

Respondent argues that Petitioner procedurally defaulted on these claims because he failed to present them during his state court proceedings. ECF No. 103 at 16-25; 30. Alternatively, Respondent maintains that Petitioner waived and abandoned this ground by pleading guilty. *Id.* To the extent Petitioner is raising a direct appeal issue, Respondent argues that this claim of trial error is a direct appeal issue and Petitioner failed to raise it on appeal.[8] *Id.*

---

[8] As alleged in his habeas Petition, Petitioner waived all these arguments by pleading guilty. Therefore, the undersigned is only addressing Petitioner's ineffective assistance of counsel claims that are not procedurally barred. With the exception of claims for ineffective assistance of counsel or voluntariness of the plea, a guilty plea waives nearly all non-jurisdictional claims. *Price v. Johnson*, 218 F. App'x 274, 276 (4th Cir. 2007) ("[R]egardless of whether Price entered an *Alford* plea or traditional guilty plea, he waived his right to challenge the sufficiency of the evidence."); *Johnson v. Catoe*, 520 S.E.2d 617, 619 (S.C. 1999); *Gibson v. State*, 514 S.E.2d 320, 324 (S.C. 1999). A plea of guilty is considered by the court to be a solemn judicial admission that the charges against the defendant are true. The defendant may not later argue that his plea was invalid except in extremely limited circumstances. *Blackledge v. Allison*, 431 U.S.

at 31. Finally, Respondent argues that all of Petitioner's ineffective assistance of counsel claims fail on the merits. *Id.* at 32-35.

At the PCR hearing, Petitioner testified that he filed his PCR application "because [he] believed that there were issues that weren't brought to the court's attention prior to [his] plea [and he] was armed with faulty information going into the plea." App. 105. Additionally, Petitioner maintained he was not interested in a plea and wanted to go to trial. App. 107. Petitioner alleged that he believed "everything on [his] case hinged upon a Fourth Amendment violation," and he was the subject of a warrantless search. App. 108. Further, Petitioner alleges that:

> [He] was a registered guest at a motel room. Agents from the Greenville County Sheriff's Office and an agent from the Greer Police Department entered [his] hotel room without a warrant, without knocking and announcing. As [he] was exiting they pushed themselves in at gunpoint and searched [his] belongings until they found incriminating evidence. . . .[he] wanted something basically along the [lines] of a *Franks* hearing or a preliminary hearing to determine – or have the court determine as to whether or not the search was legitimate, whether it was legal. Because, if not, then everything else was basically subject to the exclusionary rule.

App. 108-09. Petitioner testified that he discussed this issue with his plea counsel. *Id.* at 109.

During the PCR hearing, plea counsel testified that he and Petitioner discussed Petitioner's desire to have a trial. *Id.* at 123. Plea counsel testified that he told Petitioner if he lost

---

63 (1977) (explaining that in a very limited number of cases the court will allow a defendant's challenge to his plea on the basis that the plea was "the product of such factors as misunderstanding, duress, or misrepresentation by others," though the allegations must be concrete and specific). "Absent clear and convincing evidence to the contrary, [Petitioner] is bound by the representations he made during his plea colloquy." *Beck v. Angelone*, 261 F.3d at 396 (internal quotations and citations omitted). A defendant who has entered a valid guilty plea has admitted his guilt and *cannot challenge the sufficiency of the evidence presented as a factual basis for his guilty plea*. *United States v. Willis*, 992 F.2d 489, 490-91 (4th Cir. 1993) (emphasis added). Accordingly, the undersigned recommends that Grounds One, Two, Three, Four, Five, Six, and Twelve, which the undersigned construed as claims for ineffective assistance of plea counsel for failing to challenge evidence and the search be denied and dismissed with prejudice.

at trial he would probably receive a more substantial sentence than if he took responsibility and the judge gave him the benefit of pleading guilty. *Id.* Plea counsel testified that Petitioner raised the option of pleading guilty during their first meeting at the jail. *Id.* Petitioner instructed plea counsel to bring him up to court and he would decide whether to plead. *Id.* According to plea counsel, later than morning Petitioner decided to enter a plea under *Alford*. *Id.* Concerning Petitioner's allegation of a Fourth Amendment violation, plea counsel testified that there "would be a hearing [they] would have before the trial. If he would like to go to a jury trial, that's a motion [they] would argue prior to trial." App. 124. Plea counsel specifically testified that he never told Petitioner that he was never going to get a *Franks* hearing—"[t]hat a *Franks* hearing] would be a standard motion you would argue prior to trial." *Id.*

The PCR court found "plea counsel adequately conferred with [Petitioner], conducted a proper investigation, and was thoroughly competent in his representation." App. 137. Additionally, the PCR court found that "[Petitioner] failed to meet his burden of proving plea counsel should have contested the warrantless search in his case by moving for a *Franks* hearing." *Id.* Therefore, the PCR court determined that "[Petitioner] knowingly waived the right to challenge a search in a *Franks* hearing when he chose to plead guilty." *Id.* Furthermore, the PCR court found plea counsel's testimony to be credible and found Petitioner not to be credible. App. at 136-37. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003).

The undersigned finds that, based on the PCR testimony, the PCR court's determination that Petitioner failed to satisfy either prong of the *Strickland* test was reasonable. App. 139. Moreover, the undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR

court made objectively unreasonable factual findings. Additionally, the PCR court found trial counsel's testimony to be credible and found Petitioner's testimony not to be credible, App. 136-37, and Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)).

> **b.    Interference with Petitioner's statement at the plea hearing (Ground Thirteen)**

In Ground Thirteen, Petitioner repeats several allegations and also alleges that plea counsel was ineffective for preventing him "from reading a prepared statement to the court, at his sentencing, which could have served to mitigate his circumstances, even though state law guarantees that right." *Id.* at 21. Respondent maintains that the PCR court's determination on this issue is fully supported by the record and was reasonable and correct. ECF No. 103 at 72.

During the PCR hearing, Petitioner testified that he was asked to curtail a statement made during his plea. *Id.* at 116-20. Petitioner testified that his statement was the only defense he had left, and he was offering the statement for mitigation and requesting leniency. *Id.* at 117. Concerning Petitioner's "allocution" claim, plea counsel testified during the PCR hearing that Petitioner told him he had prepared a statement. *Id.* at 124-25. Plea counsel agreed that he told Petitioner to shorten the statement after the plea judge "gave a clear indication that she had heard about all she wanted to hear." *Id.* at 125. Plea counsel testified that in his opinion truncating the statement did not affect the outcome of the case. *Id.*

27

After pleading guilty, Petitioner began reciting his prepared statement for the plea judge. App. 12. During Petitioner's recitation of his prepared statement, the plea judge indicated: "This is probably the stuff we can kind of pare down a little bit there." *Id.* at 21. Thereafter, Petitioner continued making his statement and indicated that he would hand up the entire statement to the plea judge "afterwards." *Id.* At the conclusion of the plea hearing, the plea judge accepted Petitioner's plea as "being freely and voluntarily made with the advice of extremely competent counsel with whom you say you are well satisfied. . . ." *Id.* at 31.

On this issue, the PCR court ruled that Petitioner "failed to meet his burden of proving plea counsel improperly handled his allocution." *Id.* at 138. Specifically, the PCR court ruled that plea counsel was not deficient in advising that Petitioner be more brief in his statement. *Id.* at 139. Furthermore, the plea judge was given Petitioner's entire statement for review. *Id.* Therefore, the PCR court found that "[Petitioner] has failed to demonstrate the outcome of his plea hearing would have been different if he had been allowed to recite his entire statement to the plea judge." *Id.* Moreover, the PCR court found that plea court errors are not cognizable in PCR. *Id.* However, the PCR court determined that plea counsel was not deficient for failing to object to the plea court's instruction. *Id.*

The undersigned finds that, based on the PCR testimony and plea colloquy, the PCR court's determination that Petitioner failed to satisfy either prong of the *Strickland* test was reasonable. App. 139. Moreover, the undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings.

c.    Failure to challenge selective prosecution (Ground Ten)

28

In Ground Ten, Petitioner alleges he was selectively and maliciously prosecuted in spite of ample evidence that demonstrated Joyce Evelyn Edwards (aforementioned 'co-arrestee') was an actual conspirator. *Id.* at 15-16. Respondent argues that there is no merit to this claim, and it was waived and abandoned by Petitioner. ECF No. 103 at 59-60. Additionally, Respondent maintains that claims of prosecutorial misconduct are procedurally barred from federal habeas review when a petitioner fails to raise them during a state trial or in a state habeas petition. *Id.* at 60. The undersigned finds this habeas ground has no merit.

During his PCR hearing, Petitioner testified that he also wanted plea counsel to investigate his belief that he was subjected to selective prosecution because the woman he was arrested with was never prosecuted. *Id.* at 109. Petitioner testified that he had a meeting with plea counsel Posey where they discussed the different penalties he "could basically be subjected to if [he] didn't plea. . . ." *Id.* at 111. Plea counsel testified that he told Petitioner that his co-arrestee was prepared to testify against him and that "she's either going to get a sweet deal or they're going to dismiss her charged." *Id.* at 122. Plea counsel also testified that he did not feel like a motion or argument concerning selective or malicious prosecution would have been appropriate to make because "it was basically prosecutorial discretion at that point in time how they wanted to proceed with the co-defendant, how they wanted to treat the co-defendant." *Id.*

The PCR court found that Petitioner failed to meet his burden of proving either that there was selective prosecution or that it was incumbent upon plea counsel to argue this issue pursuant to *State v. Greer*, 705 S.E. 2d 441 (Ct. App. 2010). App. 137. Based on the facts contained in the PCR order, the PCR court found Petitioner failed to prove that plea counsel failed to render reasonably effective assistance under prevailing professional norms under the first prong of

*Strickland*. *Id.* Further, the PCR court found that Petitioner failed to prove the prejudice prong of the *Strickland* test and concluded Petitioner did not meet "his burden of proving counsel failed to render reasonably effective assistance." *Id.*

The undersigned finds that, based on the PCR testimony and guilty plea colloquy, the PCR court's determination that Petitioner failed to satisfy either prong of the *Strickland* test was reasonable. App. 139. Moreover, the undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings.

IV.     Conclusion

Based on the testimony in the transcripts, the undersigned finds that the record demonstrates that Petitioner's guilty plea was knowing and voluntary, he received effective assistance of counsel, and he is not entitled to habeas relief on any ground. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969) (finding that courts may not presume from a silent record a waiver of constitutional rights associated with a guilty plea, but must engage in a thorough, on-the-record inquiry to establish that the defendant voluntarily and understandingly entered his guilty plea); *see also Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir. 1972) (holding that "state judges may choose to engage in the colloquy mandated for their federal colleagues by Rule 11, but there is nothing in *Boykin* that requires them to do so" and denying habeas relief where the state judge ensured the defendant's attorney advised him of the nature of the charge and the consequences of his plea). "Absent clear and convincing evidence to the contrary, [petitioner] is bound by the representations he made during his plea colloquy." *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) (internal quotations and citations omitted).

During his guilty plea Petitioner acknowledged that he understood that an *Alford* plea has the same force and effect as if he were entering a guilty plea. App. 5. He testified that he understood that as a result of the *Alford* plea that the convictions would be on his criminal record and he would be sentenced as if he entered a guilty plea. *Id.* Additionally, Petitioner testified that he was not being forced to plead guilty and no one promised him anything to get him to plead. *Id.* at 6. Petitioner testified that he was happy with the services of plea counsel and that plea counsel had done everything that Petitioner asked of him. *Id.* Petitioner was advised that he was giving up his right to remain silent, to have a jury trial on the charges, and to call witnesses during a jury trial. *Id.* at 7-8.

The undersigned finds that, based on the PCR and guilty plea testimony, the PCR court's determination that Petitioner failed to satisfy either prong of the *Strickland* test was reasonable. App. 139. Moreover, the undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting his claims, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Additionally, the PCR court found plea counsel's testimony to be credible and found Petitioner not to be credible. App. 136-37. Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)).

Based on the above, Petitioner did not demonstrate that counsel was ineffective or demonstrate he suffered prejudice from any alleged deficiency in counsel's representation. Finally, the undersigned finds that Petitioner's guilty plea was entered knowingly and voluntarily. For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 103, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

August 14, 2015                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**